UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---------------------------------------------------------X
STEPHEN SETH HOSICK,                )        CASE NO.
                                    )
            Plaintiff,              )
                                    )
    v.                              )
                                    )
CHICAGO STATE UNIVERSITY,           )        PLAINTIFF DEMANDS
CHICAGO STATE UNIVERSITY            )        A TRIAL BY JURY
BOARD OF TRUSTEES, REV. LEON        )
FINNEY, Ph.D (in his individual and )
official capacities), BETSY HILL    )
(in her individual and official     )
capacities), PEGGY MONTES (in her   )
individual and official capacities), REV. )
RICHARD TOLLIVER, ( in her          )
Individual and official capacities), )
SANDRA WESTBROOK, Ph.D (in her )
individual and  official capacities), )
ERMA BROOK WILLIAMS, Ed.D     )
(in her individual and official capacities  )
                                    )
            Defendants.             )
---------------------------------------------------------X

**COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF**

Plaintiff, STEPHEN SETH HOSICK (hereinafter "HOSICK"), by his counsel, BARBOSA LAW GROUP, P.C., complaining of the defendants, CHICAGO STATE UNIVERSITY (hereinafter "CSU"), members of the CHICAGO STATE BOARD OF TRUSTEES (hereinafter the "BOT"), Rev. LEON FINNEY, Jr., (hereinafter "Finney"), in his individual and official capacities as the Chairman of the BOT, SANDRA WESTBROOK (hereinafter "Westbrook") in her individual and official capacities as the

Provost and Sr. Vice President for academic affairs and, previously, senior administrative officer of CSU, BETSY HILL (hereinafter "Hill") in her individual and official capacities as a member of the BOT, PEGGY MONTES (hereinafter "Montes") in her individual and official capacities as a member of the BOT, REV. RICHARD TOLLIVER, Ph.D (hereinafter "Tolliver") in his individual and official capacities as a member of the BOT, and ERMA BROOKS WILLIAMS, Ed.D (hereinafter "Williams") in her individual and official capacities as the liason between the BOT and administration when the acts complained of occurred alleges as follows:

### NATURE OF THE CASE

1. This action is brought to remedy unlawful discrimination practices on the basis of Race and gender under 42 U.S.C 1983 ("Section 1983); 42 U.S.C 1981 of the Civil Rights Act of 1866 ("Section 1981") Retaliation under Section 1981 and 1983; State of Illinois Civil Rights Act of 2003 (740 ILCS 23/5); State Officials and Employees Ethics Act (5 ILCS 430/15-5 *et. seq.*); and Chicago State University Law (110 ILCS 660/5-45(2)).

### JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. §2000e-5(f) (3), and 28 U.S.C. §§1331 and 1343.

3. Mandatory injunctive relief, declaratory relief, compensatory and punitive damages, attorneys fees and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. §2000e-5(g) and (k), 42 U.S.C. §1981A, 42 U.S.C. §1988, and 28 U.S.C. §2201.

4. As many of the unlawful practices complained of herein occurred within this judicial district, venue is proper in this District pursuant to 42 U.S.C. §2000e-5(f) (3)

and 29 U.S.C. §1391(b).

## DETERMINATION BY THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

5.      The United States Equal Employment Opportunity Commission determined that "The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge." Attached please find the determination of the United States Equal Employment Opportunity Commission as **Exhibit "A"**. The United States Equal Employment Opportunity Commission ("EEOC") mailed a Notice of Right to Sue on May, 17, 2010.   Hosick timely filed this lawsuit within 90 days of receipt of the EEOC notice.

## PARTIES

6.      Hosick, a thirty-eight-year old white male and a United States citizen, was and still is at all times hereinafter mentioned a resident of the State of Illinois, County of Cook.

7.      At all times herein mentioned, CSU was and still is a state educational institution existing under the laws of the State of Illinois.

8.      At all times hereinafter mentioned, CSU was and still is located at 9501 South King Drive, Chicago, Illinois 60628.

9.       At all times hereinafter mentioned, the BOT was and still is a university governing body organized and existing under the laws of the State of Illinois.

10.      At all times hereinafter mentioned, the BOT was and still is a university

governing body located at 9501 South King Drive, Chicago, Illinois 60628.

11. At all times hereinafter mentioned, CSU was Hosick's employer, Westbrook was an administrator for CSU, and Finney was the Chairman of the BOT, Hill, Tolliver, and Montes were members of the BOT, Williams was the liason between the BOT and the administration of CSU.

12. The employees of CSU referred to in this complaint authorized Hosick's termination and at all relevant times acted on behalf of their employer (CSU) and in their individual and official capacities.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

13. Hosick a thirty-eight-year old white American, had worked approximately about eight months for defendants prior to his wrongful termination on October 15, 2009. Hosick's position, prior his termination, was Director of Human Resources. Hosick reported to and was supervised by Dean Justmann, Ph.D., Interim VP for Finance and Administration ("Justmann")

14. Hosick fully performed his job functions at CSU and met the reasonable expectation of CSU since his employment from March 2, 2009 till October 15, 2009 and any assertion to the contrary is a pretext for discrimination and retaliation.

15. On or about March 11, 2009. Finney and the BOT requested information from the personnel files of several key administrators regarding the commitments that had been made when they were hired, and whether anything in their contracts with CSU would preclude their termination. Hosick declined this request.

16. On or about May 4, 2009, Williams called a meeting, at the direction of Finney, in which Finney, Westbrook, Hosick and Justmann were in attendance. At the meeting,

Finney questioned and reprimanded Hosick and Justmann for not honoring his requested of March 11, 2009 regarding accessing information in CSU employees' personnel file.

17. In early June 2009, Hosick continued to oppose unlawful intervention by the BOT, Finney, Williams in the hiring of new employees, termination of current employees, as well of awarding of no-bid contracts to vendors.

18. Without authority to do so, Finney told Williams to call herself the "Associate President". Frank Pogue ("Pogue"), the then President of CSU, had given Williams a written directive not to use the title of "Associate President".

19. In or about June 18, 2009, Williams sent an e-mail to Hosick, informing Hosick that Finney was "furious" [emphasis added] that Hosick had circumvented the BOT's directive regarding hiring and firing and accused Hosick of "Stacking the deck against Wayne Watson, Ph.D (hereinafter "Watson"), the soon-to-be hired President of the CSU, by hiring employees who had not been approved by the BOT and Finney.

20. On or about June 18, 2009, Hosick wrote an e-mail to the BOT, BOT's attorney (Mark Dunn, Esq.), Progue, Westbrook, Dean Justmann, Ph.D. Hosick's supervisor, recounting several attempts and Hosick's opposition to BOT's interference and control of personnel day-to-day decisions. The same Hosick's e-mail protested a mandate or order from the BOT and Finney that no full-time university personnel could be hired without the BOT's approval of each individual. Hosick refused to accept the mandate or order from the BOT and Finney for termination and/or hiring of personnel decisions unless authorized by Hosick's immediate supervisor or the CSU President, Pogue.

21. Hosick had stated, and Pogue agrees with Hosick that the BOT, through it's Chairman, Finney, had requested information from personnel files of several key

administrators regarding the commitments that had been made when they were hired, and whether anything in their contracts with the CSU would preclude their terminations.

22. On or about June 18, 2010, Hosick writes to Williams, who was the CSU's liason to the BOT as well as the BOT's Associate President, challenging the interference of the BOT in CSU's personnel matter. The relevant part of the e-mail stated, "**I am sending this information to the Office of the Executive Inspector General and State Auditor General and asking them to conduct an independent investigation in the facts of the mater. There is an appearance of impropriety (State Employee Ethics Act) in your actions. You are on notice that unless I am issued a directive from my chain of command to discharge these employees, no action will be taken**."

23. On or July 1, 2009, Westbrook became the Senior Administrative Officer of CSU with acting duty of the President, pending the arrival of Watson.

24. On or about July 2, 2009, Westbrook terminated the employment of the Director of Public Relations. Hosick saw Westbrook give the letter of termination to the Director of Public Relations. Westbrook told the Director of Public Relations that the decision to terminate her did not originate from Westbrook but she was taking orders "from above" [emphasis added].

25. No one "above" Westbrook, namely, the BOT had the legal authority to terminate CSU staff without cause. Article 1, Section 2 General Concepts of the BOT's Bylaws specifically states, "*[T]he Board's focus is one of oversight and policy determination. The Board delegates the conduct of administration and management of the President.*"

26. On or about July 13, 2009, Westbrook gave notice of termination of employment

to Hosick without cause to commence on October 15, 2009.

27. On or about July 17, 2009, Finney personally carried termination of a senior administrator with notice but without cause. Westbrook witnessed this termination but failed to oppose it or report it to appropriate authorities.

28. On or about July 29, 2009, Finney sent an e-mail to Westbrook which shows that the CSU BOT was using Westbrook as shield to intentionally circumvent CSU law and usurp the legal authority of the administration to operate the university, including making all the hiring and termination decisions below the position of CSU President.

29. On or about November 2009, Renee Mitchell, an African-American female (hereinafter "Mitchell") was hired to replace Hosick.

30. Hosick was unlawfully terminated in retaliation for his attempts to protect the CSU administration's legal right to manage the day-to-day operations of the institution and for refusing to cooperate with the BOT's attempt to usurp the administrations authority over personnel matters.

### COUNT I: VIOLATION OF 42. U.S.C 1983 (SECTION 1983)
### (Applies to all defendants)

31. Hosick repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS section of this complaint, with the same force and effect as if therein set forth. Having said this, the Facts section is to be read as a paragraph in Hosick's Count I.

32. Hosick is a citizen of the United States as defined by Section 1983 of the Civil Rights Act

33. The discriminatory actions for which Count I relates were carried out by the defendants in their individual and official capacities.

34. As a result of the discriminatory treatment directed at Hosick because he is white, he is unable to enjoy the full and equal benefits of all laws on the same basis as an African American on CSU property when he is on and off duty.

35. As a result of discriminatory treatment of the individual defendants directed at Hosick because he is White American, he is subjected to terms and conditions of employment that are different from those afforded by the individual defendants to African American employees.

36. Hosick has been denied the enjoyment of all benefits, privileges, terms, and conditions of employer-employee relationship afforded to African American employees of CSU and that Hosick was and continues to be denied, by all defendants, the benefits, privileges, terms, and conditions set forth in the Regulations; and, that these benefits, privileges, terms, and conditions are afforded to African American employees

37. The individual defendants' actions were undertaken intentionally and purposefully with the purpose of denying Hosick equal treatment on the basis of his race.

38. The defendants acted in bad faith and with willful, callous and wanton disregard for Hosick's federally protected rights.

39. On the basis of Hosick's race (white), he has been denied the equal enjoyment of the benefits and terms and conditions of a contractual relationship on the same basis as African Americans

40. Hosick was harmed and continues to be harmed by the defendants' conduct.

Such harm includes, defamation, great and irreparable present and future loss and injury including, but not limited to pain and suffering, humiliation, embarrassment and mental stress.

41. The conduct of the defendants named in their individual capacities, is/was the proximate cause and a substantial factor in causing Hosick's harm

### COUNT II: VIOLATION, RETALIATION, SECTION 1983
**(Applies to Individual Defendants)**

42. Hosick repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS section of this complaint, with the same force and effect as if herein set forth. Having said this, the Facts section is to be read as a paragraph in Hosick's Count II

43. Hosick alleges that he was subjected to retaliation by the individual defendants and that this retaliation was motivated by Hosick's race and the fact that Hosick reported inappropriate and unlawful interference of the individual defendants in CSU's employees' personnel files with the Office of the Executive Inspector General and the Office of Auditor General, respectively.

44. The retaliatory and discriminatory actions for which Count II relates were carried out by the individual defendants which resulted in Hosick's termination

45. The individual defendants' actions were undertaken intentionally and purposefully with the purpose of denying Hosick equal treatment on the basis of his race.

46. The individual defendants acted in bad faith and with willful, callous and wanton disregard for Hosick's federally protected rights.

47. Hosick was harmed and continues to be harmed by the individual defendants' conduct. Such conduct includes, defamation, great and irreparable present and future loss

and injury including, but not limited to pain and suffering, humiliation, embarrassment and mental stress.

48. The conduct of the individual defendants was the proximate cause and a substantial factor in causing Hosick's harm.

### COUNT III: VIOLATION, GENDER/SEX DISCRIMINATION
### (Applies to all defendants)

49. Hosick repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS section of this complaint, with the same force and effect as herein set forth. Having said this, the Facts section is to be read as a paragraph in Hosick's Count III.

50. The discriminatory actions for which Count III concern was carried out by defendants.

51. In wrongfully terminating Hosick and replacing him with an African-American female, defendants discriminated against him on the basis of his sex/gender in violation Title VII of the Civil Rights Act of 1964.

52. The defendants' actions were undertaken intentionally and purposefully with the purpose of denying Hosick equal treatment on the basis of his gender/sex.

53. Defendants acted in bad faith and with willful, callous and wanton disregard for Hosick's federally protected rights.

54. On the basis of Hosick's sex/gender (male), he has been denied equal treatment on the same basis enjoyed by opposite sex/gender (female) in employment environment.

55. Hosick was harmed (and continues to be harmed) by defendants' conduct.

Such harm includes, defamation, great and irreparable present and future loss and injury including, but not limited to pain and suffering, humiliation, embarrassment and mental distress.

56. The conduct of the defendants is/was the proximate cause and substantial factor in causing Hosick's harm.

### COUNT IV: VIOLATION, 42 U.S.C 1981 (SECTION 1981)
### (Applies to individual defendants)

57. Hosick repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS section of this complaint, with the same force and effect as if herein set forth. Having said this, the Facts section is to be read as a paragraph in Hosick's Count IV.

58. Hosick is a citizen of the United States as defined by Section 1981.

59. The discriminatory actions for which Count IV concern were carried out by individual defendants.

60. As a result of racially discriminatory treatment directed at Hosick because he is white by the individual defendants, he is unable to enjoy the full and equal benefits of all laws on the same basis as African Americans on defendants' property when he is on or off duty.

61. As a result of racial discriminatory treatment by individual defendants, directed at Hosick because he is white, he is subject to terms and conditions of employment that are different from those afforded by defendants to African American employees.

62. Hosick has been denied the enjoyment of all benefits, privileges, terms, and conditions of the employer-employee relationship afforded to African American

employees of defendants and that Hosick was and continues to be denied, by the individual defendants and their employees, the benefits, privileges, terms, and conditions set forth in the Regulations; and, that these benefits, privileges, terms, and conditions are afforded to African American employees.

63. The defendants' actions were undertaken intentionally and purposefully with the purpose of denying Hosick equal treatment on the basis of race.

64. The defendants acted in bad faith and with willful, callous and wanton disregard for Hosick's federally protected rights.

65. On the basis of Hosick's race (White-American), he has been denied the equal enjoyment of the benefits and terms and conditions of a contractual relationship on the same basis as an African-American..

66. Hosick was harmed (and continues to be harmed) by the individual defendants' conduct. Such harm includes, defamation, great and irreparable present and future loss and injury including, but not limited to pain and suffering, humiliation, embarrassment and mental stress.

67. The conduct of the defendants is/was the proximate cause and substantial factor in causing Hosick's harm.

## COUNT V: RETALIATION UNDER SECTION 1981
### (Applies to individual defendants)

68. Hosick repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS section of this complaint, with the same force and effect as if herein set forth. Having said this, the Facts section is to be read as a paragraph in Hosick's Count V.

69. Hosick is a citizen of the United States as defined by Section 1981.

70. The discriminatory and retaliatory actions for which Count V concern were carried out by the individual defendants.

71. By the acts and practices described above, defendants retaliated against Hosick because he opposed unlawful discrimination and improper interference of CSU employees' personnel files by the individual defendants.

72. Hosick is now suffering and will continue to suffer irreparable injury and monetary damages for mental anguish and humiliation as a result of defendant's retaliatory and discriminatory actions.

73. Defendants acted intentionally and with malice and/or reckless indifference to Hosick's federally protected rights.

74. The conduct of the defendants name in their individual capacities is/was the proximate cause and a substantial factor in causing Hosick's harm.

### COUNT VI: VIOLATION, 5 ILCS 430/15-5 *et. seq*. (State Ethics Act) And Retaliation in violation of the Illinois Whistleblower Reward and Protection Act (Applies to invididual defendants)

75. Hosick repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS sections of this complaint, with the same force and effect as if therein set forth. Having said this, the FACTS section is to be read as a paragraph in Hosick's Count VI.

76. Hosick reported the individual defendants to the Office of the Executive Inspector General's Office and State Auditor General's Office, respectively indicating that the individual defendants were not following BOT Regulations in personnel matters, improperly seeking to use the CSU Human Resources staff to

access contract administrative staff personnel files, and actively involved in termination of CSU employees without cause.

77. The individual defendant's actions were taken intentionally and purposely with the purpose of terminating him in violation of the state ethics act and retaliatory in nature in violation of the Illinois Whistleblower Reward and Protection Act.

78. The individual defendants acted in bad faith and with willful, callous and wanton disregard for Hosick's state protected rights.

79. Hosick was harmed and continues to be harmed by the individual defendants' conduct. Such harm includes, defamation, great and irreparable present and future loss and injury, but not limited to pain and suffering, humiliation, embarrassment and mental distress.

80. The conduct of the individual defendants is/was the proximate cause and a substantial factor in causing Hosick's harm.

## COUNT VII: VIOLATION, STATE OF ILLINOIS CIVIL RIGHTS ACT OF 2003 (740 ILCS 23/5)

81. Hosick repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS sections of this complaint, with the same force and effect as if therein set forth. Having said this, the FACTS section is to be read as a paragraph in Hosick's Count VII.

82. The discriminatory actions which Count VII relates were carried out by the individual defendants.

83. The discriminatory actions by the individual defendants prevented Hosick from enjoying full and equal benefits of all laws on the same basis as African American employees of CSU.

84. As a result of the individual defendants' discriminatory actions directed at Hosick, he was subjected to terms and conditions of employment different from those afforded African American employees.

85. The individual defendants' actions were undertaken intentionally and purposefully with the purpose of denying Hosick equal treatment on the basis of his race and gender.

86. The individual defendants acted in bad faith and with willful, callous and wanton disregard for Hosick's state protected rights.

87. Hosick was harmed and continues to be harmed by the individual defendants' conduct. Such harm includes, defamation, great irreparable present and future loss and injury including, but not limited to pain and suffering, humiliation, embarrassment and mental distress.

88. The conduct of the defendants named above is/was the proximate cause and a substantial factor in causing Hosick's harm.

### COUNT VIII: VIOLATION, CHICAGO STATE UNIVERSITY LAW (110 ILCS 660/5-45(2)) (Applies to all defendants)

89. Hosick's repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS sections of this complaint, with the same force and effect as if therein set forth. Having said this, the FACTS section is to be read as a paragraph in Hosick's Count IX.

90. The wrongful and discriminatory actions for which Count IX relates were carried out by the defendants.

91. The BOT has the authority to remove, "for good cause," the president, all

necessary deans, professors, associate professors, assistant professors, instructors, other educational and administrative assistants, and all other necessary employees. At a minimum, the position of Director of Human Resource which Hosick held prior to his termination was a necessary position. Hosick was terminated without cause by the individual defendants.

92. The actions of the individual defendants were undertaken intentionally and purposefully with the purpose of denying Hosick procedural and substantive rights under the Chicago State University Law (hereinafter "CSUL").

93. Hosick was harmed and continues to be harmed by the conduct of the individual defendants. Such harm includes, defamation, great and irreparable present and future loss and injury including, but not limited to pain and suffering, humiliation, embarrassment and mental stress.

94. The conduct of the individual defendants above is/was the proximate cause and a substantial factor in causing Hosick's harm.

### PRAYER FOR RELIEF

WHEREFORE, Hosick respectfully requests that this Court enter a judgment:
(a) declaring that the acts and practices complained of herein are in violation of Title VII sex/gender discrimination, 42 U.S.C. §1981 race discrimination and retaliation, 42 U.S.C 1983 Due Process Clause of the 14th Amendment and retaliation, State of Illinois Civil Rights Act of 2003, State Officials and Employees Ethics Act, and Chicago State University Law;
(b) enjoining and permanently restraining these violations;

(c) directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and to not continue to affect Hosick's employment opportunities;

(d) directing defendants to place Hosick in the position he would be in but for defendants' discriminatory treatment of him, and to make him whole for all earnings he would have received but for defendants' discriminatory and retaliatory treatment, including, but not limited to, wages, bonuses, pension, interest and other lost benefits;

(e) awarding Hosick compensatory damages for his emotional distress and humiliation;

(f) awarding Hosick punitive damages;

(g) awarding Hosick pre-judgment and post-judgment interest, as well as reasonable attorney's fees and costs of this action;

(h) awarding Hosick damages relating to adverse tax consequences; and

(i) awarding such other and further relief as the Court deems necessary and proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to 42 U.S.C. §1981A and Rule 38(b) of the Federal Rules of Civil Procedure, Hosick demands a trial by jury in this action.

Dated: Chicago, Illinois
August 15, 2010

                                                      Yours, etc.

                                                      ___/s/ Raymond Barbosa_____
                                                      Raymond Barbosa (3126801)
                                                      George U. Oparanozie (6300477)
                                                      Barbosa Law Group, P.C.
                                                      Attorney for Plaintiff
                                                      STEPHEN SETH HOSICK
                                                      100 West Monroe Street
                                                      Chicago, Illinois 60603
                                                      (312) 223-9885