UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN SETH HOSICK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10 C 5132 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| CHICAGO STATE UNIVERSITY, | ) | |
| CHICAGO STATE UNIVERSITY | ) | |
| BOARD OF TRUSTEES, LEON | ) | |
| FINNEY, Jr., BETSY HILL, | ) | |
| PEGGY MONTES, RICHARD TOLLIVER, | ) | |
| SANDRA WESTBROOKS (in her individual | ) | |
| and official capacities), and ERMA BROOK | ) | |
| WILLIAMS (in her individual and official | ) | |
| capacities), | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Stephen Seth Hosick, a former employee of Chicago State University

(CSU), brings this suit against CSU, the CSU Board of Trustees, and individuals Leon

Finney, Betsy Hill, Peggy Montes, Richard Tolliver, Sandra Westbrooks (in both her

individual and official capacities), and Erma Brook Williams (in both her individual

and official capacities), alleging violations of federal and state law. R. 39. Hosick's

federal claims arise under Title VII of the Civil Rights Act, 42 U.S.C. § 1981, and 42

U.S.C. § 1983. Hosick's state claims arise under the Illinois State Constitution, the

Illinois Civil Rights Act, the Illinois State Official and Employees Ethics Act, and the

law creating CSU, 110 ILCS 660/5 (the CSU Law).[1] Defendants have moved to dismiss

---

[1] This Court has subject matter jurisdiction over the case because several of Hosick's claims arise under federal law. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state-law claims. 28 U.S.C. § 1367.

most[2] of the second amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). R. 42. As detailed below, the motion is granted in part and denied in part. All claims against CSU, Hill, Montes, and Tolliver are dismissed. The claims against Finney, Westbrooks, Williams, and the Board are dismissed in part.

## I.

At this stage of the litigation, we accept Hosick's allegations as true and draw reasonable inferences in his favor. *Ashcroft v. al-Kidd*, — U.S. —, 131 S. Ct. 2074, 2079 (2011). From March 2, 2009 until his firing on October 15, 2009, Hosick, a white male, was employed as Director of Human Resources for CSU. R. 39 ¶¶ 13-14. Around March 11, 2009, the Board, which serves as the governing body for CSU, and Finney, the Board's chairman, asked Hosick whether any provisions of some employees' contracts would prohibit their termination. *Id.* ¶¶ 9, 11, 15. Hosick resisted this intervention into personnel matters. *Id.* ¶ 19.

On May 4, 2009, Williams, the Board's Associate President and liaison to CSU administration, called a meeting attended by Finney, Hosick, and Westbrooks (who was CSU's senior administrative officer). *Id.* ¶¶ 17, 25. During the meeting, Finney provided a letter to Hosick claiming that the Board had authorized Finney's involvement in everyday decisions regarding the University and reprimanding Hosick and Westbrooks for not informing him about personnel issues. *Id.* ¶¶ 16, 18. Hosick

---

[2] Each defendant seeks dismissal against each of the counts brought against it, with the following exceptions: the Board does not seek dismissal of Counts 1, 2, and 6, and Westbrooks (individually) and Finney do not seek dismissal of Counts 3 and 5. R. 43.

complained to the Board's Chief Legal Counsel, who responded on June 30, 2009, that the Board had granted Finney no such authorization. *Id.*

Through early June 2009, Hosick continued to oppose intervention into personnel matters by the Board, Finney, and Williams. *Id.* ¶ 19. Hosick then learned from co-workers that Finney was aiming to replace CSU administrators with African Americans, to match the ethnic makeup of CSU. *Id.* ¶ 20. Hosick relayed these concerns to Westbrooks, who told him, "What's wrong with diversity?" *Id.* On June 18, 2009, Williams relayed to Hosick that Finney was "furious" with him and that Finney thought Hosick was "stacking the deck against" the incoming CSU President by hiring employees without approval from the Board and Finney. *Id.* ¶ 22. Shortly thereafter, Hosick sent an e-mail to the Board and Westbrooks complaining about the information requests and general interference in his everyday personnel decisions by the Board and Finney. *Id.* ¶ 23. Hosick also informed Williams in writing that he would discharge employees only if directed through his chain of command and that he was lodging an ethics complaint with the Office of Executive Inspector General's Office and the State Auditor General's Office. *Id.* ¶ 25.

On July 1, 2009, Westbrooks assumed the role of acting President and shortly thereafter notified Hosick of his termination without cause, effective October 15, 2009. *Id.* ¶¶ 26, 29. In November 2009, an African-American female was hired to replace Hosick. *Id.* ¶ 32.

Hosick's complaint sets forth several claims. First, he alleges intentional racial and gender discrimination by CSU and the Board under Title VII. *Id.* ¶¶ 35, 43-44, 48-

3

49, 51. He alleges race discrimination under § 1981 by all "individual defendants."[3] *Id.*

¶¶ 57, 60. Third, Hosick alleges that all Defendants violated the Illinois Civil Rights

Act of 2003, 750 ILCS 23/5. *Id.* ¶¶ 90-92. Next, Hosick alleges intentional deprivation

by all individual defendants of his liberty and property interests in pursuing

employment under both the Fourteenth Amendment of the United States Constitution,

*id.* ¶¶ 71-72, and Article I, Section 2 of the Illinois Constitution, *id.* ¶¶ 71-72. Further,

he alleges intentional and unlawful retaliation by all individual defendants in violation

of the Illinois State Official and Employees Ethics Act, ILCS 430/15-5. *Id.* ¶¶ 83-86.

Last, Hosick alleges intentional violation by all individual defendants of his rights

under the law establishing and governing CSU (the CSU Law), 110 ILCS 660/5-45. *Id.*

¶¶ 109-10. Hosick seeks compensatory damages, punitive damages, and an injunction

against the ongoing violation of these laws. *Id.* at 19-20.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only

include "a short and plain statement of the claim showing that the pleader is entitled

to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the

defendant fair notice of what the claim is and the grounds upon which it rests." *Bell*

*Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[3]The Complaint uses the title "individual defendants" on several occasions, but it does not define which Defendants are included in that label. For purposes of completeness, the Court assumes that Hosick is referring to every Defendant other than the Board or CSU, including Westbrooks and Williams in their official capacities.

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 129 S. Ct. at 1950.

As detailed below, Hosick's procedural due process claims fail for lack of a property interest in his employment. His claim under the CSU Law fails because that statute does not provide a private cause of action. All claims against CSU are barred because CSU is not a suable entity. His claims against Hill, Montes, and Tolliver fail because they are too speculative and do not plausibly state a claim. His state law claims against Westbrooks and Williams in their official capacities are barred by sovereign immunity. His federal claims against Westbrooks and Williams in their official capacities survive only to the extent that they seek injunctive relief against ongoing harm. His Illinois Ethics Act claim against the Board is barred by sovereign immunity. His Illinois Civil Rights Act claims against Finney, Westbrooks, and

Williams are barred because individuals cannot be sued under that law. The other claims survive this motion to dismiss.

## III.

### A.     Procedural Due Process – Counts 4 and 7

Counts 4 and 7 are claims for violations of due process under both the United States and Illinois Constitutions against all individual defendants. R. 39 at 13-4; 17-18. Hosick's procedural due process claims fail because he had no property interest in his employment. To establish a federal due process claim, Hosick "must demonstrate (1) that he had a constitutionally protected property interest, (2) that he suffered a loss of that interest amounting to a deprivation, and (3) that the deprivation occurred without due process of law." *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). Protected property interests are not created by the Constitution but are derived from independent sources, such as state law. *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 943 (7th Cir. 1996). To establish a property interest in his job under Illinois law, Hosick must prove that he legitimately expected that his employment would continue by showing a specific "'ordinance, state law, contract, or understanding limiting the ability of the state or state entity to discharge him.'" *Moss*, 473 F.3d at 700 (quoting *Krecek v. Bd. of Police Com'rs of La Grange Park*, 646 N.E.2d 1314, 1318-19 (Ill. App. Ct. 1995)).

Hosick argues that the CSU Law, 110 ILCS 660/5-45, establishes his property interest. In relevant part, the statute empowers the Board "[t]o employ, and, for good cause, to remove . . . all other necessary employees." *Id.* But the Seventh Circuit has

held that this language cannot be the basis for a protected property interest. *Grimes v. E. Illinois Univ.*, 710 F.2d 386, 387-88 (7th Cir. 1983) (citing the identically-worded statute used in the statutory scheme establishing Eastern Illinois University). *Grimes* held that the statute was more sensibly interpreted as a grant of power to a board of governors to remove employees for good cause, rather than a grant of rights to employees. *Id.* at 388. *Grimes* controls.

Hosick cites *Meer v. Graham* for support. 524 F. Supp.2d 1044, 1050 (N.D. Ill. 2007) (holding that the plaintiff had established a property interest in employment). *Meer*, however, interpreted university bylaws, not Illinois state statutes. *Id.* Additionally, the bylaws required that the school had to provide "due cause" when imposing "severe sanctions," and there were detailed procedures for imposing sanctions. *Id.* Those bylaws were both more detailed and more constraining (on the university) than the CSU Law, and thus arguably the bylaws could be the source of individual rights rather than a grant of power to the university. And Hosick has not bothered to advance an argument explaining why *Grimes* does not control. Accordingly, Hosick's claim under the federal Constitution is dismissed.

Hosick also alleges a due process violation under the Illinois Constitution. Similar to the Fourteenth Amendment, the Illinois Constitution provides, "No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill. Const. art. I, § 2. Hosick does not contend that the analysis under the Illinois Constitution is any different than the analysis under the United States Constitution. Indeed, Illinois courts collapse the two inquiries into one

7

discussion. *See e.g., Buccieri v. Wayne Township*, 444 N.E.2d 249, 252 (Ill. App. Ct. 1982). Accordingly, Hosick's due process claim under the Illinois Constitution is also dismissed.

### B. The CSU Law – Count 8

Hosick brings a separate claim directly under the CSU Law against all individual defendants. R. 39 ¶¶ 107-112. In this claim, Hosick is no longer relying on the purported property interest for a due process claim; instead Hosick alleges that the statute has an implied right of action that provides a basis for a lawsuit. The Court disagrees.

Under Illinois law, courts consider the following four factors to determine whether there is an implied right of action: "(1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purposes of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1117-18 (Ill. 1999). Measured by these factors, the CSU Law does not contain an implied right of action.

Hosick's response to Defendants' motion to dismiss does not address these factors. R. 54. Instead, Hosick argues that "there is a private right of action where state officials, acting in their individual capacities, violate the constitutional rights of a person." *Id.* at 13. As far as it goes, Hosick's assertion is correct; there is, generally speaking, a private right of action in that situation, but that right of action is conferred

8

by 42 U.S.C. § 1983. In contrast to § 1983, the CSU Law creates and empowers CSU's Board; its text does not provide a private right of action. In addition to establishing and empowering the Board, the CSU Law, titled "Powers and duties," empowers the Board to establish search committees and withhold compensation from employees who owe dues or other payments to a labor organization. *Id.* The statute's language does not reflect that the legislature intended an implied private right of action.

While Hosick has not addressed this test for an implied right of action, a quick comparison to other cases refusing to imply a right of action, *see e.g., Metzger v. DaRosa*, 805 N.E.2d 1165 (Ill. 2004), makes clear that the CSU Law does not provide for an implied right of action. *Metzger* held that a section of the Illinois Personnel Code, 20 ILCS 415/19c.1, did not create an implied right of action. *Metzger*, 805 N.E.2d at 1166. The statute there provided that an employee who reports improper or illegal activity cannot be disciplined for the disclosure of the activity. *Id.* at 1168. Despite the whistleblower-protection purpose of the statute, the Illinois Supreme Court held that the statute failed all four factors of the implied-right-of-action test. *Id.* at 1170.

*Metzger* directs courts to apply the implied right of action standard not just to a specific statutory provision, but to the statutory scheme as a whole. *Id.* at 1170 (holding that the Personnel Code was passed for the public's benefit). Thus, the Court looks to the entirety of the CSU Law, 110 ILCS 660/5. The purpose of the CSU legislation is to offer courses, conduct research, and provide other such public services. 110 ILCS 660/5-5. Like the Personnel Code, the statute creating CSU was passed for the benefit of the public and its students – not for the specific benefit of CSU

9

employees. Thus, the statute would fail at least the first three elements of the implied right of action test. First, Hosick does not bring this suit as a member of the public, but instead as an aggrieved employee of CSU. Second, the CSU Law was not enacted to prevent improper hiring and firing of school employees, but instead to create CSU and to empower and provide parameters for the Board to undertake the tasks necessary to operate a university that will be useful to the public. As to the third element, while the public is arguably better served by a university administration that operates efficiently and only fires employees for good cause, implying a private right of action would deprive the Board of its independent ability to make hiring and firing determinations, as explicitly provided in § 660/5-45. Accordingly, Hosick's claim under 110 ILCS 660/5 is dismissed because there is no implied right of action.

### C.    All Claims against CSU

CSU argues that the university itself is not the proper entity to be sued, and instead the Board is the suable entity. Under the CSU Law, 110 ILCS 660/5, it is clear that the Board, not CSU, is the proper entity to be sued. The CSU Law provides that, "[t]he Board shall have power to enter into contracts and to sue and be sued." 110 ILCS 660/5-40. Again, Hosick does not address this argument in his response brief. R. 54 at 7-8. Instead, Hosick argues that CSU should be a party to the case under principles of sovereign immunity. *Id.* But the issue is not sovereign immunity; the issue is that the Illinois Legislature has provided that the entity to be sued is the Board, not the University. *See Bassett v. Chicago State Univ.*, 2008 WL 3849920, at *1 (N.D. Ill. Aug.

15, 2008) (holding that a plaintiff cannot sue CSU, and must sue the Board). All of Hosick's claims against CSU are dismissed.

### D.    Official Capacity Claims against Westbrooks and Williams

Only those claims seeking injunctive relief, not monetary damages, for ongoing violations of federal law against Williams and Westbrooks in their official capacities may proceed. Claims against individuals in their official capacities are subject to a sovereign-immunity analysis because "[a] suit against a state official in his . . . official capacity is a suit against the state." *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000). The Eleventh Amendment prohibits suits against states in federal court absent unequivocal state consent or valid congressional action. *Green v. Mansour*, 474 U.S. 64, 68 (1985). Neither state consent nor congressional action is present for these claims. As such, Hosick must rely on an exception to sovereign immunity.

The *Ex Parte Young* doctrine is one such exception which permits a private party to sue individuals in their official capacities to obtain prospective relief for an ongoing violation of *federal* law. *MCI Telecommunication Corp. v. Illinois Bell Telephone Co.*, 222 F.3d 323, 345 (7th Cir. 2000). Thus, to the extent that Hosick's complaint alleges that Westbrooks and Williams are engaging in ongoing violations of *federal law*, those claims survive a sovereign immunity analysis. But in Counts 5 and 6, Hosick alleges that Williams and Westbrooks, in their official capacities, violated the Illinois State Official and Employees Ethics Act, R. 39 ¶¶ 82-86, and the Illinois Civil Rights Act of 2003, *id.* ¶¶ 90-93, respectively. The allegations do not identify a federal law and do not fall within the *Ex Parte Young* doctrine. Thus, they are dismissed.

11

That leaves a claim in Count 3 against Westbrooks and Williams in their official capacities. Count 3 alleges an ongoing violation of 42 U.S.C. § 1981. R. 39 ¶¶ 63-64. It is not clear from the complaint what type of injunctive relief Hosick seeks. R. 54 at 4. It is plausible that the injunctive relief Hosick seeks may be prospective, especially if he seeks reinstatement.[4] Thus, Count 3 may proceed for injunctive relief as an official capacity claim.

### E.    All Claims against Hill, Montes, and Tolliver

Hill, Montes, and Tolliver are members of CSU's Board, but are only mentioned in the caption of the complaint. R. 39 at 1. Proof is not required at this stage of the litigation, *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009), but allegations beyond "formulaic recitation of the elements" of the claim are, *Iqbal*, 129 S.Ct. at 1951. *Iqbal* held that allegations that the defendants "knew of, condoned, and willfully and maliciously agreed to subject" the plaintiff to unconstitutional treatment were bare assertions that the Court did not need to take as true. *Id.* The only way Hosick's complaint can be read to allege *anything* about these three members of the Board would be by including them in the conclusory allegations against all "Defendants." But those allegations are formulaic recitations, and there are no allegations specific to Hill, Montes, or Tolliver in Counts 3 or 5.[5] R. 39 ¶¶ 56-65, 85-87. The current complaint fails to state a claim against them.

---

[4]If Hosick is not seeking reinstatement, Defendants are free to re-raise the issue that Hosick's requested relief falls outside of *Ex Parte Young* at summary judgment.
[5]For reasons explained below, Hosick could not pursue the claim in Count 6 even if there were sufficient allegations.

12

## IV.

Having addressed the claims and Defendants that can be dismissed in whole, the Court moves on to a more specific analysis focusing on individual claims and particular Defendants. The following parties remain for analysis: the Board, Finney, Westbrooks, and Williams – all three persons in their individual capacities. Counts 1, 2, 3, 5, and 6 remain for analysis.

### A.      Race and Gender Discrimination (Title VII) – Counts 1 and 2

Counts 1 and 2 invoke Title VII against the Board, which has explicitly acknowledged that Congress may exercise its Fourteenth Amendment authority to subject state governments to Title VII claims. R. 43 at 5 n.3. These claims proceed against the Board.

### B.      Section 1981 – Count 3

Count 3 is a claim under § 1981 against all individual defendants. As discussed and with the limitations above, the claim survives against Williams and Westbrooks, in their official capacities. Additionally, Westbrooks (individually) and Finney do not seek dismissal of Count III. R. 43 at 2 n. 1. Thus, only Williams (individually) requires examination here.

Hosick alleges that Williams caused him harm by intentionally discriminating against him on racial grounds, including the denial of "equal enjoyment of the terms and conditions of a contractual relationship." R. 39 ¶¶ 55-57, 62-63. It is further alleged that Williams passed negative messages from Finney on to Hosick, R. 39 ¶ 22, and that Williams called a meeting where Hosick was reprimanded for not following Finney's

13

requests for personnel information, *id.* ¶ 18. Although the allegations against Williams are few, they are sufficient to establish a connection between Williams and the conduct that allegedly violated § 1981. Accordingly, Count 3 survives against Williams, as well as Westbrooks and Finney.

### C.    Illinois State Official and Employees Ethics Act – Count 5

Count 5 is a claim under the Illinois State Official and Employees Ethics Act against all Defendants. Specifically, Hosick relies upon a statute in the "Whistle Blower Protection" Article of the State Officials and Employees Ethics Act. 5 ILCS 430/15-10, 15-20. The statute protects an employee from retaliation for reporting illegal conduct to the State or a supervisor. 5 ILCS 430/15-10. Westbrooks (individually) and Finney do not seek dismissal of this Count. R. 43 at 2 n.2. Thus, only the Board and Williams (individually) require examination here.

Hosick's claim against the Board is barred by sovereign immunity. *Benjamin v. Illinois Dept. of Financial and Professional Regulation,* 2011 WL 3471064, at *7 (N.D. Ill. Aug. 8, 2011) (holding that Ethics Act claim against a state agency is barred by sovereign immunity). The Court agrees. To be sure, the Board has waived sovereign immunity – but only partially and only in Illinois state courts. Article XIII, Section 4 of the Illinois Constitution abolishes sovereign immunity "[e]xcept as the General Assembly may provide by law." The Illinois State Lawsuit Immunity Act specifies in relevant part that "[e]xcept as provided in . . . the State Officials and Employees Ethics Act . . . the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1. The Ethics Act provides that "[t]he circuit courts of this State shall have

14

jurisdiction to hear cases brought under this Article." 745 ILCS 430/15-25. One might contend that Illinois has thus waived its sovereign immunity to these claims in federal court, but "a state can waive its sovereign immunity to suit in its own courts without thereby being deemed to have waived its Eleventh Amendment immunity to suit in federal court . . . ." *Osteen v. Henley*, 13 F.3d 221, 224 (7th Cir. 1994). The Ethics Act illustrates this principle. Illinois has only partially waived its sovereign immunity under the Ethics Act, and only in its own state courts. Thus, the analysis turns to whether the Board is afforded the protections of the Eleventh Amendment.

State universities are "the alter ego of the State" for purposes of the Eleventh Amendment because "any damage award chargeable to university assets is an award against the State itself." *Cannon v. Univ. of Health Sciences / The Chicago Med. Sch.*, 710 F.2d 351, 357 (7th Cir. 1983). This holding encompasses state university boards of trustees. *Kaimowitz v. Bd. of Trustees of Univ. of Illinois*, 951 F.2d 765, 767 (7th Cir. 1991). Thus, the CSU Board is protected from suit under the Ethics Act in federal court by the Eleventh Amendment. Hosick does not address this hurdle in his response brief. Hosick's claim against the Board for a violation of the Ethics Act is dismissed.

Hosick's claim against Williams, in her individual capacity, is not plausible and does not survive the motion to dismiss. Under the Illinois State Official and Employees Act, Williams may be liable (1) if Hosick "[d]isclose[d] . . . to a public body an activity, policy, or practice of any . . . other State employee that the State employee reasonably believes is in violation of a law, rule, or regulation;" and (2) "that conduct was a contributing factor in the retaliatory action alleged by the State employee." 5 ILCS

15

430/15-10, 430/15-20. Hosick alleges that his report to the Inspector General is the activity for which he suffered retaliation. *Id.* ¶¶ 25, 82-83. Hosick further alleges that his termination was, at least in part, intentional retaliation by "Defendants" for this disclosure. *Id.* ¶¶ 84-86. None of the allegations for this claim directly reference conduct by Williams. Hosick makes no specific allegation as to how Williams retaliated against Hosick, or was otherwise involved in retaliation, after Hosick submitted the information to the Inspector General. Westbrooks is the one who fired Hosick. *Id.* ¶ 29. Although there are a few barebone allegations regarding Williams's conduct *before* Hosick sent information to the Inspector General, the only way Williams could be lumped in to the allegations under the Ethics Act would be when Hosick alleges "Defendants" engaged in certain conduct. R. 39 ¶¶ 85-87. Again, these allegations are merely "formulaic recitations" of the claim, *Iqbal*, 129 S. Ct. at 1951, and not enough to survive a motion to dismiss. The Ethics Act claim against Williams is also dismissed.

### D.  Illinois Civil Rights Act – Count 6

Count 6 is a claim under the Illinois Civil Rights Act against all Defendants. The Board does not seek dismissal of Count 6, R. 43 at 2 n.1, so only Finney, Westbrooks (individually), and Williams (individually) require examination here.

Finney, Westbrooks, and Williams may not be sued under the Illinois Civil Rights Act. The Act provides that parties that have suffered violations "may bring a civil lawsuit, in a federal district court or State circuit court, against the offending *unit* of government." 740 ILCS 23/5(b) (emphasis added). The text of the Act authorizes suits only against the relevant "unit of government." Nowhere does it provide for suits

16

against individuals. *See Neuman v. United States*, 2007 WL 3407442 (S.D. Ill. Nov. 15, 2007) ("[The Act] provides a cause of action against only three potential parties: the State of Illinois, its counties, and its local governments."). As a result, the claims against Finney, Westbrooks, and Williams in their individual capacities are dismissed.

## V.

The only remaining issue is whether the dismissal of these claims are with or without prejudice. Defendants argue that all of the dismissals should be with prejudice because Hosick has had ample (three) opportunities to correct deficiencies in his complaint. R. 55 at 10-11. Hosick, unsurprisingly, argues that he should be permitted to amend the complaint. R. 54 at 15. Most of the dismissed claims cannot be cured by amendment, due to sovereign immunity or some other legal defect. These claims are dismissed with prejudice.

The claims against Hill, Montes, and Tolliver are dismissed without prejudice. If Hosick's discovery reveals facts that justify adding any of these Board members back to the list of defendants, then Hosick should bring a motion under Federal Rule of Civil Procedure 15 to amend the complaint. Hosick should bear in mind that many of the claims originally pursued for these three board members would be unavailable even if there are facts evidencing their involvement. For example, for the reasons stated in Part IV.D, none of the board members can be sued under the Illinois Civil Rights Act.

The claim under the Ethics Act against Williams in her individual capacity is dismissed without prejudice. If Hosick wishes to revive the claim on the basis of

17

newly discovered facts, he should file the appropriate motion. The other claims that are dismissed are dismissed with prejudice because their defects cannot be cured.

## VI.

Defendants' motion to dismiss [R. 43] is granted in part and denied in part. Counts 4, 7, and 8 are dismissed with prejudice. All claims against CSU are dismissed with prejudice. Claims against Hill, Montes, and Tolliver are dismissed without prejudice. Claims in Count 5 against Williams in her individual capacity are dismissed without prejudice. All claims against Westbrooks and Williams, in their official capacities, are dismissed with prejudice, except for Count 3 to the extent Hosick seeks prospective injunctive relief. The following is a summary of the remaining claims:

▸ Counts 1 and 2 proceed against the Board.

▸ Count 3 proceeds against Westbrooks (individually), Williams (individually), and Finney, and proceeds against Westbrooks and Williams, in their official capacities, to the extent the claim requests prospective injunctive relief for an ongoing harm.

▸ Count 5 proceeds against Westbrooks (individually) and Finney.

▸ Count 6 proceeds against the Board.

18

Defendants shall file an answer to the remaining claims by January 3, 2011. The Court grants in part and denies in part Defendants' motion to reset [81] the summary-judgment briefing schedule. Dispositive motions must be filed by January 30, 2012; the response is due March 5, 2012; and the reply is due on March 19, 2012.

ENTERED:

Honorable Edmond E. Chang
United States District Judge

DATE: December 19, 2011

19